## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## DOCKET NO. 3:06-cv-00489-W

| | | |
|---|---|---|
| **BAYTREE ASSOCIATES, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **DANTZLER, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

THIS MATTER is before the Court on Defendant Dantzler, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Transfer Venue (Doc. No. 8), filed February 9, 2007. The motion has been fully briefed by the parties (see Docs. Nos. 9, 14, 18), and following a hearing on June 7, 2007, both parties submitted supplemental affidavits (see Docs. Nos. 22, 23) and briefs (Docs. Nos. 24, 26) in support of their respective positions. Following oral argument on June 7, 2007, the Court took the Motion to Dismiss under advisement. Having considered the submissions of counsel, the Court will DENY Defendant's Motion to Dismiss and DENY the Motion to Transfer Venue.

Defendant has moved to dismiss for lack of personal jurisdiction, and the Court has received evidence from both parties. "When a court's personal jurisdiction is properly challenged by motion under Federal Rule of Civil Procedure 12(b)(2), the jurisdictional question thereby raised is one for the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." Mylan Laboratories, Inc. v. Akzo, 2 F.3d 56, 59-60 (4th Cir. 1993) (citing Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989); Dowless v. Warren-Rupp Houdailles, Inc., 800 F.2d 1305, 1307 (4th Cir. 1986); 2A James W. Moore, Moore's Federal Practice ¶

12.07[2.-2] (1985 & Supp.1992-93)).  For the court to assert personal jurisdiction, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment. "  Christian Science Bd. of Directors of the First Church of Christ v. Nolan, 259 F.3d 209, 215 (4th Cir.2001).

### I. North Carolina's Long-Arm Statute

As to the first prong, "North Carolina's long-arm statute is construed to extend jurisdiction over non-resident defendants to the full extend permitted by the Due Process Clause." Id.  Plaintiff argues North Carolina's long-arm statute authorizes the Court to assert jurisdiction over Defendant in this case pursuant to two subsections of the statute, which provide:

> A court of this State having jurisdiction of the subject matter has jurisdiction over a person . . . under any of the following circumstances:
> . . . .
> 5) Local Services, Goods or Contracts.--In any action which:
>     a. Arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to perform services within this State or to pay for services to be performed in this State by the plaintiff; or
> . . . .
>     c. Arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to deliver or receive within this State, or to ship from this State goods, documents of title, or other things of value .
> . . .

N.C. Gen. Stat. § 1-75.4(5) (2007).

In light of the record in this case, the Court agrees with Plaintiff that both of these provisions of the North Carolina long-arm statute permit the exercise of jurisdiction over Defendant.  The affidavits of Greg Lovette, Virginia Huffman, and Frank Rodgers show that part of Plaintiff's performance under the contract took place in North Carolina and that Defendant - making no

condition on where Plaintiff could perform the contract services - promised to pay for Plaintiff's services, thus making applicable subsection 5(a). Triad Motorsports, LLC v. Pharbco Marketing Grp., Inc., 104 F. Supp. 2d 590, 596 -97 (M.D.N.C. 2000) ("Because Defendant promised to pay for services to be performed by Plaintiff in North Carolina, . . . North Carolina General Statute Section 1-75.4(5)(a) authorizes the assertion of personal jurisdiction over the Defendant in this case."). Furthermore, North Carolina courts have held that money payments are a "thing of value" within the meaning of North Carolina General Statute Section 1-75.4(5)(c). Pope v. Pope, 38 N.C. App. 328, 331, 248 S.E.2d 260, 262 (1978). Thus, because Defendant promised to submit payments to Plaintiff in North Carolina, N.C. Gen. Stat. 1-75.4(5)(c) provides an alternative basis for the assertion of personal jurisdiction over Defendant.

## II. Federal Due Process

Turning to the second prong of the analysis, "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citations omitted). "A forum legitimately may exercise personal jurisdiction over a nonresident who 'purposefully directs' [its] activities toward forum residents. A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985) (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)).

The parties dispute whether Plaintiff has met its burden to show specific jurisdiction.[1]  In analyzing whether the court's exercise of specific personal jurisdiction comports with the Due Process Clause, this Court must examine three things: (1) to what extent did Defendant purposefully avail itself of the privilege of conducting activities in North Carolina; (2) did Plaintiff's claims arise out of those North Carolina related activities; and (3) is the exercise of jurisdiction constitutionally reasonable (*i.e.,* whether a court's exercise of personal jurisdiction offends "traditional notions of fair play and substantial justice," Int'l Shoe Co., 326 U.S. at 316).  Christian Science Bd. of Directors of the First Church of Christ, 259 F.3d at 216.

## A. Minimum Contacts

The first two prongs of the Christian Science three-part test govern the analysis of whether Defendant established sufficient minimum contacts with North Carolina.  Initially, it should be noted that the United States Supreme Court has made clear that personal jurisdiction may not be avoided "merely because the defendant did not *physically* enter the forum state."  Burger King, 471 U.S. at 476 (emphasis in original).  Thus, the fact Defendant lacked any physical ties to North Carolina related to the contract is not dispositive.

In attempting to show "purposeful availment," Plaintiff presents many instances where Plaintiff's employees, while working in Florida at Defendant's office, submitted documents to and made numerous contacts with Plaintiff's office in North Carolina.  These examples are wholly

---

[1]Personal jurisdiction can be either general or specific.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 9 (1984).  General jurisdiction refers to a court's ability to exercise jurisdiction over a defendant based upon continuous, systematic, and substantial connections with the forum, whereas specific jurisdiction allows a court to adjudicate claims arising from a defendant's activities or contacts with the forum state. 16 Moore's Federal Practice, § 108.40 (Matthew Bender 3d ed.).  It appears Plaintiff does not contend the Court has general jurisdiction over Defendant, and a summary review of the evidence before the Court suggests that general jurisdiction does not exist under these facts.

irrelevant to this inquiry because they show unilateral actions by Plaintiff, not Defendant. The fact Plaintiff's employees were present in Defendant's office does not impute such activity to Defendant and certainly fails to indicate any "purposeful availment" by Defendant.

Nonetheless, the record indicates that Defendant purposefully availed itself of the privilege of conducting activities in North Carolina. "[W]ith respect to interstate contractual obligations, . . . parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." Id. at 473 (quotations omitted). "While the signing of a contract alone may not automatically establish minimum contacts, the Court may look to prior negotiations, future contract consequences, the terms of the contract, and the parties' dealings in order to determine whether there is a sufficient amount of activity to satisfy the elemental fairness of minimum contacts." Blue Mako, Inc. v. Minidis, 472 F. Supp. 2d 690, 700 (M.D.N.C. 2007) (citing Burger King. Corp. v. Rudzewicz, 471 U.S. 462 (1985)). Notably, in Blue Mako, the court concluded the defendant had sufficient minimum contacts with North Carolina based in part on the fact the defendant "knew at the time that there would be a substantial, continuous relationship between [the plaintiff] in North Carolina and [the defendant] because of these negotiations." Id. at 700. In the course of contract negotiations and formation, Defendant purposefully and knowingly created a continuing business relationship that involved the provision of goods and services by a North Carolina company and North Caroline employees, all of which was to be governed by North Carolina law. As in Blue Mako, these facts support a finding of minimum contacts.

Here, the contract and service agreement between the parties makes clear that Defendant knew upon execution that: (1) Plaintiff's headquarters were located in North Carolina; (2) Plaintiff

would conduct contract administration in North Carolina; (3) Defendant would send payments under the contract to Plaintiff's headquarters in North Carolina; and (4) North Carolina law would govern the validity of the contract, as well as any dispute arising out of or relating to the contract. Although the majority of Plaintiff's performance of the contract was to take place in Florida, the contract does not expressly call for services to be performed in Florida. Indeed, prior to contract formation, Defendant was advised by Plaintiff's agent during a presentation that offsite Database Administration work would be performed. (Affidavit of F. Rodgers, ¶ 8). Since Plaintiff's only office was in North Carolina, Defendant should have anticipated that the offsite work would likely take place at the North Carolina office. Thus, it was foreseeable from the onset that at least a portion of the services under the contract would be performed in Plaintiff's only office in Charlotte, North Carolina.

In addition to and notwithstanding the fact the evidence suggests the bulk of the contract was performed in Florida, Plaintiff submitted affidavits and other evidence showing it performed substantial work under the contract (*i.e.*, creation of customized computer code, service support, and project management) in North Carolina. Plaintiff has presented affidavits that show most of the custom code design - specifically requested by Defendant - was created in North Carolina by residents of North Carolina. Plaintiff's invoices submitted to Defendant clearly identify which of Plaintiff's employees were performing work, and by referencing travel expenses for only a few of the identified employees, the invoices impliedly indicate that much of the work was being performed off-site. Defendant does not dispute receiving or reviewing these invoices. Moreover, Defendant failed to object to portions of the contract being performed in North Carolina - work performed for Defendant and at Defendant's request - over the course of more than twelve months. Defendant's

argument that it was unaware that certain services were being performed in North Carolina does not diminish the nature of these contacts. Defendant cannot turn a blind eye to the invoices, which show the place of contractual performance, and later claim ignorance so as to avoid the grasp of courts outside its home base of Florida. Defendant's continuing contractual and business relationship with Plaintiff show that Defendant purposefully availed itself of the privilege of conducting business in North Carolina.[2]

Further, it is clear from the record that Plaintiff's injuries arose out of the North Carolina-related activities. Specifically, Plaintiff alleges Defendant failed to submit payment for invoices sent from North Carolina, although Defendant had contractually promised to do so, and by doing so, Defendant also failed to pay for services performed in North Carolina. Accordingly, the minimum contacts test is satisfied under these facts such that they support this Court's exercise of personal jurisdiction over Defendant.

B. Traditional Notions of Fair Play and Substantial Justice

In analyzing whether a court's exercise of personal jurisdiction offends "traditional notions of fair play and substantial justice," Int'l Shoe Co., 326 U.S. at 316 , the inquiry is one of whether the exercise of jurisdiction is constitutionally reasonable. Christian Science Bd. of Directors of the First Church of Christ, 259 F.3d at 216. "In determining whether jurisdiction is constitutionally reasonable, we may evaluate 'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial

---

[2]Notably, this ongoing relationship and acquiescence for a significant period of time distinguishes this case from those cases involving a single sales transaction or a contract that involves a one-time deal. In those instances, unlike this case, it might be more difficult to make a finding that the defendant purposefully availed itself of the protections of the forum state.

system's interest in obtaining the most efficient resolutions of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.'" Id. at 217 (quoting Burger King, 471 U.S. at 477). These five factors are addressed in turn.

The burden on Defendant to try this case in North Carolina is existent, yet inconsequential. According to Defendant's CFO, Defendant is a multi-million dollar company that sells lumber products to various parts of the world and has facilities in Florida, California, Puerto Rico, and South America. While having to litigate in another state may be somewhat more costly, Defendant's additional expense should be limited to appearances in North Carolina for mediation, a hearing on any dispositive motions, and the trial. As the location of the witnesses and documents appears to be divided between Florida and North Carolina, discovery and deposition costs for Defendant are likely to be the same no matter where the case is litigated. Thus, forcing Defendant to litigate this case in North Carolina is not "gravely difficult and inconvenient." Burger King, 471 U.S. at 478.

Next, the analysis turns to a consideration of the forum state's interest in adjudicating the dispute. The parties contractually agreed that North Carolina law would govern disputes arising out of the contract. For this reason, North Carolina holds a strong interest in interpreting and applying its own laws and therefore has a significant stake in adjudicating this dispute. Additionally, as noted above, "A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." Id. at 473. This factor favors North Carolina's exercise of jurisdiction over Defendant.

Turning to the third factor in the reasonableness inquiry (Plaintiff's interest in convenient and effective relief), Plaintiff holds an interest in obtaining relief in the forum it so chose - North Carolina. As the home of Plaintiff's headquarters, North Carolina would provide the most

convenient forum for Plaintiff to address its grievances against Defendant. This factor tips in favor of a North Carolina court exercising jurisdiction over Defendant.

"The fourth factor in our reasonableness inquiry examines whether the forum state is the most efficient place to litigate the dispute. Key to this inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." <u>OMI Holdings, Inc. v. Royal Ins. Co. of Canada</u>, 149 F.3d 1086, 1097 (10th Cir. 1998) (citations omitted). Here, witnesses are located in both Florida and North Carolina. Based on the multiple affidavits submitted by the parties, it appears as though both parties contend the bulk of the witnesses reside in each party's respective state. Although the contract was negotiated and signed by Defendant in Florida, it was drafted and finally executed through Plaintiff's signature in North Carolina. Furthermore, it is governed by North Carolina law. The issue of "piecemeal litigation" appears to be nonexistent, or at least, insignificant at this stage. In satisfying this factor, Plaintiff has sufficiently shown that North Carolina is a "realtively sensible choice in terms of promoting judicial efficiency." <u>Christian Science Bd. of Directors of the First Church of Christ</u>, 259 F.3d at 218.

Finally, turning to the shared interest of the several states in furthering fundamental social policies, it is unlikely that an exercise of personal jurisdiction by North Carolina would affect Florida's policy interests. This, along with the other four factors, indicate that North Carolina's exercise of personal jurisdiction over Defendant is constitutionally reasonable and does not offend "traditional notions of fair play and substantial justice."

In sum, Defendant has "purposefully avail[ed] themselves" of the privilege of conducting partnership and corporate activities in North Carolina thereby invoking the benefits and protections

of its laws, Plaintiff's claims "arise out of North Carolina-related activities," and the exercise of jurisdiction over Defendant is "constitutionally 'reasonable.'" Christian Science Bd. of Dirs. of First Church of Christ, Scientist, 259 F.3d at 216. Accordingly, this Court has personal jurisdiction over Defendant.

### III. Motion to Transfer Venue

Defendant contends that, if not dismissed for lack of personal jurisdiction, then 28 U.S.C. § 1404(a) requires transfer of the case for convenience of the parties and witnesses. Section 1404(a) provides, "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In ruling on a motion to transfer, this Court has broad discretion, Nichols v. G.D. Searle & Co., 991 F.2d 1195 (4th Cir.1993), and must engage in an "individualized, case-by-case consideration of convenience and fairness." VanDusen v. Barrack, 376 U.S. 612, 622 (1964). In evaluating a motion to transfer venue, courts consider numerous factors relevant to "convenience" and "justice." These factors include:

> (1) The plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantages and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriate in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws.

Datasouth Computer Corp. v. Three Dimensional Tech., Inc., 719 F. Supp. 446, 450-51 (W.D.N.C. 1989) (citations omitted).

Obviously, factors one and ten do not favor transfer because Plaintiff, which is headquartered in Charlotte, initially chose North Carolina as the forum for its lawsuit and the parties agree North Carolina law governs the dispute. Similarly, factor nine favors retention because the controversy in this matter concerns Defendant's failure to remit payment to North Carolina for services performed by a North Carolina company. Additionally, factor eight does not favor transfer due in part to the Court's standing order governing civil case management and the speed by which cases move on the docket of the undersigned judge. Collectively, these four factors favor retention of this case in North Carolina. Factors four and eleven are not relevant in this case and neither favor nor disfavor transfer. The sole factor favoring transfer is factor five because Plaintiff will most likely have to seek enforcement of the judgment in Florida. Both parties present equally valid reasons for transfer or retention respectively for the remaining factors (two, three, six, and seven). As such, none of these four factors favor transfer or retention. In light of the four factors disfavoring transfer, with only one factor favoring transfer, Defendant's motion to transfer venue is denied.

IT IS, THEREFORE, ORDERED that Defendant's motion to dismiss, or, in the alternative, to transfer (Doc. No. 8) is hereby DENIED. Defendant shall file an answer or other responsive pleading on or before twenty (20) days from entry of this Order. The parties are DIRECTED to comply with the Court's Local Rule 16.1 and file a proposed discovery plan on or before 20 days after joinder of the issues.

IT IS SO ORDERED.

Signed: August 27, 2007

Frank D. Whitney
United States District Judge